IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSEPH G. AMBROSE,

    Plaintiff,

vs.                                                                              Civ. No. 01-1263 JP/KBM

THOMAS E. WHITE, as successor to
GREGORY R. DAHLBERG, Secretary of
Army, and UNITED STATES OF AMERICA,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On July 1, 2002, the Defendants filed Defendants' Motion to Dismiss or in the Alternative for Summary Judgment (Doc. No. 55). Having reviewed the briefs and relevant law, the Court finds that the motion to dismiss or for summary judgment should be granted.

A. Background

Unless otherwise noted the following material facts are undisputed. The Plaintiff brings this lawsuit against the Department of the Army under the Age Discrimination in Employment Act (ADEA) for age discrimination based on a hostile work environment.[1] The Plaintiff also alleges retaliation for engaging in protected Equal Employment Opportunity (EEO) activities.

The Plaintiff is a supervisory general engineer. He has been employed at White Sands Missile Range (WSMR) from June 1, 1981 to the present. George Orlicki, the Deputy to the Commanding General and Technical Director for WSMR, authorized and approved Plaintiff's promotion, effective July 7, 1996, to a GS-15, a pay level which the Plaintiff continues to possess. In addition, the Plaintiff has continued to receive automatic within grade salary increases

---

[1] The Plaintiff was born on March 8, 1955.

as well as monetary awards.

From July 2, 1997 to October 1, 2002, the Plaintiff was the Chief of the Technology Division for the Technology Development Directorate. During the majority of his service as Division Chief, the Plaintiff's first line supervisor was John Jensen, the Director of the Technology Development Directorate. As a Division Chief, the Plaintiff supervised a staff of 20 to 30 people and was in charge of multi-million dollar research projects. Those projects included the High Performance Computing Initiative (HPCI)[2]; the Smart Munitions Test Suite (SMTS); and the Multiservice Target Control System (MSTCS).[3] On October 1, 2001, the Plaintiff was reassigned to the position of Technical Advisor to the National Range Directorate, a position which does not include supervisory duties or the administration of multi-million dollar research projects.

In January 1999, the Plaintiff filed an informal EEO complaint against the Department of the Army based on allegations of age discrimination. In April 1999, the HPCMP Post-Deployment Evaluation Assessment Process (P-DEAP) conducted an assessment of the HPCI program at WSMR. The Summary Report of the HPCI inspection noted 21 failures in 34 categories. The Summary Report noted management problems and the possible need for management changes. WSMR subsequently received memoranda written by Brian Simmons, Deputy to the Commander, United States Army Test and Evaluation Command, and Dr. Deloris Etter, Deputy Under Secretary of Defense (Science and Technology) which outlined management problems with the HPCI program and discussed the possibility that funding would be removed unless the

---

[2]The HPCI is also referred to as the High Performance Computer Modernization Program (HPCMP).

[3]The MSTCS is also known as the Next Generation Target Control System.

management problems were corrected.  The Plaintiff claims that he had trouble managing the HPCI program because he was denied funding for its operation and maintenance.

The Plaintiff subsequently dropped the January 1999 informal EEO complaint after Mr. Orlicki on May 18, 1999 allegedly threatened to convene a tribunal to declare the Plaintiff mentally unfit if he did not dismiss his EEO complaint.  Nonetheless, in the summer of 1999, the Plaintiff received a special act award and an on-the-spot monetary award for his work on the SMTS project in November 1998 and early 1999.  The Plaintiff's work appraisals remained high throughout 1999 to the present.

During August and September 1999, Mr. Jensen made remarks to the Plaintiff that the Directorate needed "younger blood" to operate the HPCI program and allegedly told the Plaintiff he would replace him with "younger blood."  On September 16, 1999, Mr. Jensen removed from the Plaintiff and his team the responsibility of managing the HPCI program.  Mr. Jensen replaced the Plaintiff with George Rumford who was born in 1968.

On September 22, 1999, Mr. Orlicki attended an International Test and Evaluation Association (ITEA) conference in Atlanta, Georgia.  The Plaintiff alleges that Mr. Orlicki made comments to others that Plaintiff had been fired.  Also at approximately this time, Mr. Jensen allegedly told Vic Krepatki that the Plaintiff was being fired.  On December 6, 1999, Mr. Orlicki attended another ITEA conference, this time in Las Cruces, New Mexico.  The Plaintiff alleges that Mr. Orlicki again made statements to others that Plaintiff had been fired.

In December 1999, Mr. Jensen removed the Plaintiff from the SMTS program because the development phase was complete and the program was to be transferred to the operations phase.

John Corriveau took charge of the SMTS program at that point. However, shortly thereafter, Mr. Jensen returned the SMTS program to the Plaintiff because the transition process was delayed. The Plaintiff alleges that he was denied operation and maintenance funding that had been offered to Mr. Corriveau.

On January 10, 2000, the Plaintiff sought EEO counseling for alleged age discrimination and retaliation. The Plaintiff filed an informal EEO complaint on January 11, 2000. The Plaintiff alleges that after he filed the January 2000 informal complaint, Mr. Jensen ignored the chain of command and undermined the Plaintiff's authority by giving his subordinates instructions and orders, sometimes on a daily basis.

On March 27-30, 2000, the HPCI program underwent another program review. The resulting report concluded that WSMR failed in only one area. The Plaintiff alleges that Mr. Rumford had operation and maintenance funding for the HPCI program which Plaintiff did not have.

The Plaintiff filed a formal EEO complaint of discrimination on May 7, 2000 in which he alleged age discrimination based on the HPCI program being transferred to Mr. Rumford and several acts of retaliation which created a hostile work environment. The Plaintiff alleges that in June 2000 Mr. Jensen relieved him of his responsibilities for the SMTS program, purportedly because the developmental phase had been completed. In September 2000, Mr. Jensen allegedly excluded the Plaintiff from all involvement in obtaining funding for his programs, administering funding for his programs, and making significant decisions with respect to those programs. On September 12, 2000, Mr. Jensen announced the final transition of the SMTS program to the operations phase.

4

On August 29, 2001, Brigadier General Stephen Flohr, Commanding General of WSMR, advised the Plaintiff that his position as Division Chief would be abolished as part of a reorganization. The Plaintiff claims that he was told that his position would be abolished if he continued to pursue his EEO complaint. On August 30, 2001, the Plaintiff filed an EEO claim against the Department of the Army and Brigadier General Flohr. The EEO office treated this claim as an amendment to the Plaintiff's previous formal EEO complaint.

On October 1, 2001, Glen Herman, the Director of the National Range, informed the Plaintiff that his position was abolished and that he would become the Technical Advisor to the Director of the National Range. The Plaintiff claims that his duties as Technical Advisor are largely unspecified and undefined.

B. Standards

In considering a motion to dismiss for failure to state a claim, the Court must liberally construe the pleadings, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor. *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). The Court may dismiss the complaint if it appears to a certainty that the plaintiff can prove no set of facts in support of the plaintiff's claim which would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial

burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

C.  Discussion

The Defendants raise five arguments in favor of their motion to dismiss or for summary judgment.  First, the Defendants argue that the Plaintiff's claims against Robert Colvin are barred by quasi-judicial immunity.  Second, the Defendants argue that the Plaintiff failed to exhaust his administrative remedies with respect to some of his discrimination claims.  Third, the Defendants argue that the Plaintiff has not shown a *prima facie* case of a hostile work environment related to the Plaintiff's age.  Fourth, the Defendants argue that the Plaintiff has not shown a *prima facie* case of retaliation.  Fifth, the Defendants argue that the Plaintiff cannot show that the Defendants' explanations for their actions are pretextual.

1. Quasi-Judicial Immunity of Robert Colvin

The Court has already dismissed the claims against Robert Colvin.  *See* Order (Doc. No. 32), filed May 6, 2002; Memorandum Opinion and Order (Doc. No. 66), filed Aug. 7, 2002; Order (Doc. No. 68), filed Aug. 7, 2002, Order (Doc. No. 71), filed Aug. 12, 2002.  Consequently, the Defendants' quasi-judicial immunity argument is moot.

2. Exhaustion of Administrative Remedies and Hostile Work Environment

29 C.F.R. §1614.105(a)(1) provides that "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  The Defendants argue that the Plaintiff failed to timely initiate contact with an EEO Counselor concerning certain allegations of discrimination.  Specifically, any claims of discrimination occurring prior to November 26, 1999 would be untimely under §1614.105(a)(1).[4] The relevant untimely allegations of discrimination include Mr. Orlicki's comments made on May 18, 1999 and at the September 1999 ITEA conference, Mr. Jensen's comments about the need for younger blood made in August and September 1999, the Plaintiff's removal from the HPCI program, and the denial of operation and maintenance funds for the HPCI program.  The Plaintiff argues that any allegations of discrimination occurring prior to the 45 day period are part of a hostile work environment claim which extended into the 45 day period.  Consequently, the Plaintiff argues that the pre-November 26, 1999 claims are timely.

The United States Supreme Court recently held in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061 (2002) that since "the series of acts constituting a hostile work environment constitute only one unlawful employment practice," a charge of discrimination is timely if "'any act that is part of the hostile work environment'" falls within the timely filing provision. *Boyler v. Cordant Technologies, Inc.*, ___ F.3d ___, 2003 WL 125367 *2 (10th Cir.

---

[4]The Defendants argue that the 45 day period began on December 10, 1999.  The Defendants' calculation of the 45 day period was based on a counseling contact date of January 24, 2000.  EEO documents show, however, that the counseling contact occurred on January 10, 2000.

Jan. 16, 2003)(quoting and citing *Morgan*, 122 S.Ct. at 2074 n.11, 2075). "*Morgan* implicitly overruled ... Tenth Circuit cases to the extent these cases held that recovery on a Title VII hostile work environment claim is not available for acts taken outside the statutory time period where the plaintiff knew or should have known the conduct was discriminatory when the acts occurred." *Id.* at *2. "To survive summary judgment, ... [the plaintiff is] required to demonstrate only that genuine issues of material fact exist as to whether the acts about which he complained were 'part of the same actionable hostile work environment practice, and if so, whether any [fell] within the statutory time period.'" *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 818 (9th Cir. 2002).

    The first question to be addressed, therefore, is whether the pre-November 26, 1999 actions are part of an actionable hostile work environment claim. To establish a hostile work environment claim based on age discrimination, the plaintiff "must show under the totality of the circumstances that the harassment was pervasive or severe enough to alter the terms, conditions, or privileges of employment, and the harassment stemmed from ... age-related animus." *Holmes v. Regents of University of Colorado*, 1999 WL 285826 *7 (10th Cir.). In determining if the work environment is sufficiently hostile, the court examines: "(1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance." *Id*. (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)). Moreover, the plaintiff must show that the work environment was both subjectively and objectively hostile. *Id*. (citing *Davis v. United States Postal Service*, 142 F.3d 1334, 1341 (10th Cir. 1998)).

    In this case, the Plaintiff admits that he did not know of "a direct link between Mr. Orlicki

and the acts of age discrimination." Examination of Plaintiff at 107, Oct. 16, 2000. The Plaintiff, however, intimates that depending on Mr. Orlicki's role in removing the Plaintiff from the HPCI program Mr. Orlicki might have been directly involved in age discrimination when the Plaintiff was removed from the HPCI program. *Id*. Contrary to this intimation, the evidence shows that Mr. Jensen, not Mr. Orlicki, made the decision to remove the Plaintiff from the HPCI program. Depo. of Mr. Orlicki at 38, Aug. 30, 2001; Examination of Mr. Jensen at 22, 100202.

With respect to Mr. Jensen's remarks about "younger blood," the Plaintiff made the following statements:

> Mr. Jensen made a series of statements in which he referred to replacing elements of the work force, including me, with, quote, younger blood. <u>The statement was made specifically with respect to one program on one occasion</u>, but it was generally part of a policy which as the time he had espoused.
> <u>Since then I have not heard him make the statement, in fairness to him.</u> In the August/September time frame of '99, I was repeatedly told about the requirement to put younger blood into the workplace....

Examination of Plaintiff at 65, Oct. 16, 2000 (emphasis added). Mr. Jensen testified that he has made statements to the effect that WSMR needs younger employees. Examination of Mr. Jensen at 169, Oct. 16, 2000. Mr. Jensen noted that the average age of WSMR employees is 49 and that soon half of the employees will be retirement eligible. *Id*. Mr. Jensen also testified that he did not tell the Plaintiff that he wanted to replace him with someone younger. Examination of Mr. Jensen at 27, 100202.

The Plaintiff argues that further evidence of a hostile work environment is found in his removal from the HPCI program. The evidence regarding the removal of the Plaintiff from the HPCI program, however, indicates that its customers were going to cease funding the program unless management problems were resolved. Since the Plaintiff was the program manager for the HPCI program the upper management officials including Mr. Jensen decided to remove the

9

Plaintiff from the HPCI program.

The Plaintiff, nonetheless, argues that he did not have enough operation and maintenance monies to properly operate the HPCI program. Lack of money, however, did not contribute entirely to the management problems at the HPCI program. For instance, Dr. Etter complained that the management was not responsive to her staff's inquiries and was thus uncooperative. In fact, the HPCI program better served its customers after Mr. Rumford took over the program. The Plaintiff also contends that the hostile work environment included Mr. Jensen bypassing the Plaintiff in dealing with Plaintiff's subordinates, removal of Plaintiff's programmatic and supervisory duties, abolishment of the Technology Division, and reassignment of the Plaintiff to the position of Technical Advisor.

Examining the evidence in the light most favorable to the Plaintiff, the Court concludes that a reasonable jury would not find that there was a hostile work environment. The Plaintiff has failed to produce evidence that the alleged harassment by Mr. Orlicki was sufficiently frequent, unreasonably interfered with the Plaintiff's work performance, or stemmed from age-related animus. Moreover, Mr. Jensen's general remarks about the aging work force at WSMR are insufficient to demonstrate any discriminatory motivation on the part of Mr. Jensen. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994). In addition, Mr. Jensen's alleged single remark to the Plaintiff about replacing him with "younger blood" is not considered evidence of severe, pervasive, and frequent discrimination even when considered with the evidence as a whole. The Plaintiff has also failed to provide any evidence that the lack of operation and maintenance funding for the HPCI program and Mr. Jensen's subsequent removal of the Plaintiff from the HPCI program were based on any kind of age-related animus. Finally, the Plaintiff has not produced evidence that the following actions were motivated by an age-

10

related animus: Mr. Jensen's alleged bypassing of the Plaintiff in dealing with Plaintiff's subordinates, removal of Plaintiff's programmatic and supervisory duties, abolishment of the Technology Division, and reassignment of the Plaintiff to the position of Technical Advisor. The Court concludes that the Plaintiff has failed to demonstrate that genuine issues of material fact exist as to whether the actions he complained of constituted an actionable hostile work environment. Accordingly, summary judgment will be granted as to the hostile work environment claim. Furthermore, the Plaintiff's claims of retaliation based on the pre-November 26, 1999 actions by Mr. Orlicki and Mr. Jensen are untimely under 29 C.F.R. §1614.105(a)(1) and subject to dismissal.

      3. Retaliation

To establish a *prima facie* case of retaliation based on the ADEA, the plaintiff has the burden of establishing that 1) the plaintiff was engaged in opposition to ADEA discrimination; 2) the plaintiff was subjected to adverse employment action; and 3) a causal connection existed between the protected activity and the adverse employment action. *Sanchez v. Denver Public Schools*, 164 F.3d 527, 533 (10th Cir. 1998)(citations omitted). The Defendants argue that the Plaintiff has not established a *prima facie* case of retaliation because he has not suffered an adverse personnel action. The Defendants observe that the Plaintiff did not suffer any decrease in pay and benefits although he was removed from the HPCI and SMTS programs and ultimately transferred to the position of Technical Advisor.

"The Tenth Circuit liberally defines the phrase 'adverse employment action.'" *Id*. at 532 (citations omitted). Adverse employment actions are not limited to monetary losses. *Id*. The courts must examine the unique factors of each case on a case-by-case basis to determine if there is an adverse employment action. *Id*. An adverse employment action exists if there is "'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Id*. (quoting *Burlington Indusrties, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). "'[A] mere inconvenience or an alteration of job responsibilities'" does not constitute an adverse employment action nor does a purely lateral transfer which does not result in a decrease in salary or benefits. *Id*. (quoting *Crady v. Liberty Nat. Bank and Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir.1993)). However, if the lateral transfer is "objectively equivalent to a demotion," the transfer should be considered an adverse action. *Trujillo v. New Mexico Dept. of Corrections*, 1999 WL 194151 *4 (10th Cir.)(citations omitted). For instance, if a lateral transfer results in a loss of prestige, loss of opportunity for professional growth, and a significant change in responsibilities, the lateral transfer can be considered a demotion in form or substance and therefore an adverse employment action. *Id.*; *Ratts v. Board of County Com'rs, Harvey County, KS*, 141 F.Supp.2d 1289, 1309 (D. Kan. 2001).

The Court finds that the Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to some of the actions he claims are adverse employment actions.[5] First, the Plaintiff presented evidence that his removal from the HPCI program resulted in a loss of prestige. The HPCI program is a high visibility program upon which the future of WSMR has

---

[5]The Court notes that for the sake of argument it will nonetheless address the Plaintiff's retaliation claim as it relates to the pre-November 26, 1999 actions by Mr. Orlicki and Mr. Jensen.

relied to transition to digitized technology in its testing programs.  Deposition of Col. Robert S. Jeska at 14-16,  Aug. 28, 2001.  Second, the Plaintiff presented evidence that his transfer to the position of Technical Advisor involved a substantial change in responsibilities and duties as well as a possible loss of prestige.  *See* Deposition of Glen Herman at 17, 1000202 ("The duties changed significantly.").

The Plaintiff, however, has not presented any evidence that his temporary removal from the SMTS program in December 1999 and his final removal from the SMTS program in September 2000 were anything more than mere inconveniences or alterations of job responsibilities required as the result of transitioning the SMTS program to the operational phase. The Plaintiff also did not present evidence that the lack of funding for the HPCI and SMTS programs caused significant changes in the Plaintiff's employment status during the time he managed those programs.  The Plaintiff was still a Division Chief and was not demoted in any way.  Moreover, the Plaintiff did not present evidence that Mr. Jensen's alleged bypassing of the Plaintiff's supervisory and programmatic authority was likewise anything more than a mere inconvenience or alteration of job responsibilities which did not cause a significant change in the Plaintiff's employment status as Division Chief.  Summary judgment will, therefore, be granted as to the retaliation claims concerning the two times the Plaintiff was removed from the SMTS program, the lack of funding of the HPCI and SMTS programs, and Mr. Jensen's alleged bypassing of the Plaintiff's supervisory and programmatic authority.

4.  Legitimate, Nondiscriminatory Reasons and Pretext

The Defendants also argue that even if the Court finds that the Plaintiff has established a *prima facie* case of retaliation, the Defendants have nonetheless articulated legitimate nondiscriminatory reasons for their actions and the Plaintiff cannot demonstrate that those reasons

are merely a pretext for retaliation.[6]  Since the Court concluded that there was an adverse employment action with respect to the removal of the Plaintiff from the HPCI program and the transfer of the Plaintiff to the position of Technical Advisor, the Court will focus on those actions and whether the Defendants articulated legitimate nondiscriminatory reasons for those actions.  If necessary, the Court will then address whether the Plaintiff has presented evidence that those reasons are pretextual.

Once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant "to articulate a legitimate, non-discriminatory reason for its treatment of [p]laintiff." *Rodriguez v. America Online, Inc.*, 183 F.Supp.2d 1340, 1354 (D.N.M. 2001).  After the defendant has met its burden of production with respect to the showing of a nondiscriminatory reason for its actions, the burden shifts back to the plaintiff to show pretext.  *Id*.  "A plaintiff can show pretext by revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence.'"  *Id*. at 1354-55 (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)(quotations omitted)).  "'[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.'"  *Id*. at 1355 (quoting *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988)).  Moreover, in assessing pretext, the Court properly considers "the manager's perception of the employee's performance, and not the employee's subjective

---

[6]The Defendants also argue that if the Court finds that the Plaintiff established a *prima facie* case of age discrimination, the Defendants have articulated legitimate nondiscriminatory reasons for its actions and the Plaintiff cannot show a pretext for the unlawful discrimination.  The First Amended Complaint has two ADEA claims: a hostile work environment claim and a retaliation claim (Counts I and II).  Since the First Amended Complaint does not contain a *per se* age discrimination claim, the Defendants' argument regarding pretext with respect to a *per se* age discrimination claim is misplaced.

14

evaluation of his performance." *Id.* (citing *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1209 (10th Cir. 1999)). "The court may not second guess the business judgment of the employer." *Id.* (citing *Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1330 (10th Cir.), *cert. denied*, 528 U.S. 15 (1999)). The plaintiff establishes pretext if after viewing the plaintiff's evidence as a whole, a rational juror could infer that the actions were retaliatory. *Id.* (citing *Ortiz v. Norton*, 254 F.3d 889, 898 (10th Cir. 2001)).

      The Defendants persuasively argue that they have carried their burden of production in showing that they had legitimate, nondiscriminatory reasons for removing the Plaintiff from the HPCI program and transferring him to the Technical Advisor position. First, it is clear that Mr. Simmons and Dr. Etter were unhappy with the way the HPCI program was being managed and even went so far as to threaten to take away its funding if management changes were not made. Under these circumstances, the Defendants had a legitimate, nondiscriminatory reason for removing the Plaintiff from the management of the HPCI program. Second, the reorganization which led to the transfer of the Plaintiff to the position of Technical Advisor was designed to save the government money by combining two directorates (one of which was the Technology Development Directorate) and reorganizing a fifth directorate. Deposition of Col. Robert S. Jeska at 34-35, Aug. 28, 2001. The purpose of combining the two directorates was to "have a better development and operation organization through the synergism that would be gained through operator and developer partnering in development processes such that systems that were developed were what the ultimate customer and user in the field needed." Deposition of Glen Herman at 27, Oct. 2, 2002. Moreover, the Plaintiff "was uniquely qualified because of his broad-based technical expertise and his operational experience through SMTS to serve in that capacity as a technical expert and scientific advisor." Deposition of Glen Herman at 17, 100202. The

15

Plaintiff was not chosen to lead the newly combined directorates because Tom Chavez, the person who took that position, "brought stronger personnel management and some program management skills to bear." *Id*. These are legitimate, nondiscriminatory reasons for transferring the Plaintiff to the Technical Advisor position.

The Plaintiff makes three pretext arguments. First, the Plaintiff argues that the evidence fails to show that the Department of Defense "mandated" a change in management of the HPCI program or the removal of the Plaintiff in particular from the HPCI program. In fact, the undisputed material evidence shows that the Department of Defense, an objective third party, was threatening to take away funding if management problems at the HPCI program were not corrected.[7] Since the Plaintiff was the manager of the HPCI program, a change in management could reasonably mean the removal of the Plaintiff from the management of the program in order to save the program. A reasonable fact finder could not rationally find that the Defendants' reasons for removing the Plaintiff from the HPCI program are unworthy of credence or based on a retaliatory motive.

---

[7] *See* P-DEAP Summary Report, Defendants' Ex. 3 (attached to Defendant's brief-in-chief)("Throwing money into a program will not fix a management problem;" "If program director cannot be at his/her major program review, perhaps some management changes are in order;" "Send a strong message to WSMR about inadequate management"); Memo from Brian Simmons to George Orlicki, Defendants' Ex. 4 (attached to Defendants' brief-in-chief)("The HPCMP has indicated that they are recommending to the Director of DDR&E that Mr. Hollis be informed that all HPC assets should be removed from WSMR and be redistributed to other DC's. If this happens, it would be of great embarrassment not only to WSMR and TECOM but to the entire Army RDT&E community. To prevent this from happening, I am asking that you personally evaluate and provide recommendations back to me on how we can correct these problems"); Memo from Dr. Etter, Defendants' Ex. 5 (attached to Defendant's brief-in-chief)("I regret to inform you that the WSMR DC management has not been responsive to my staff's inquiries and has not honored the agreements made by the Army on behalf of the WSMR DC;" "If these issues can not [sic] be resolved immediately, I am obligated to terminate WSMR's status as a DC and redistribute the HPC equipment located at the distributed [sic] center"); Response to Dr. Etter's memo by Walter Hollis, Defendants' Ex. 6 (attached to Defendant's brief-in-chief)(will designate new DC management).

The Plaintiff also argues that the alleged comment by Mr. Jensen about replacing the Plaintiff with "younger blood" and the lack of funding to operate the HPCI program are likewise evidence of a pretext with respect to the removal of the Plaintiff from the HPCI program. Although a younger man replaced the Plaintiff as the HPCI program manager, viewing the alleged single "younger blood" comment in the context of the abundant undisputed evidence from objective third parties regarding a need for a change in management, a rational juror could not find that the Defendants' reason for removing the Plaintiff from the HPCI program was unworthy of credence nor could a rational juror infer that the removal of the Plaintiff from the HPCI program was retaliatory. Similarly, the Plaintiff has not produced evidence to demonstrate that a rational juror could infer that the lack of HPCI funding was retaliatory. It is highly unlikely that the Defendants would purposefully withhold available HPCI funding and thereby jeopardize a very expensive high visibility program which is tied to the future development of WSMR. The Plaintiff has not demonstrated that there is an issue of material fact with respect to whether the Defendants' reasons for their actions are pretextual. Summary judgment should, therefore, be granted in the Defendants' favor.

IT IS ORDERED that Defendants' Motion to Dismiss or in the Alternative for Summary Judgment (Doc. No. 55) is granted and this case will be dismissed with prejudice.

_____
CHIEF UNITED STATES DISTRICT JUDGE